___



**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 19, 2020**

The Order of the Court is set forth below. The docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

ANNALYN NELSON WHITT,                                          CASE NO. 19-03801-NPO

   DEBTOR.                                                                           CHAPTER 13

## MEMORANDUM OPINION AND ORDER
## OVERRULING TRUSTEE'S OBJECTION TO CONFIRMATION

This matter came before the Court for hearing on December 16, 2019 (the "Hearing"), on the Trustee's Objection to Confirmation (the "Objection") (Dkt. 17) filed by James L. Henley, Jr., the duly appointed standing chapter 13 trustee (the "Trustee") in the above-referenced bankruptcy case. At the Hearing, Tylvester O. Goss represented the Trustee and Thomas C. Rollins, Jr. represented the debtor, AnnaLyn Nelson Whitt (the "Debtor"). At the Hearing, the Court instructed the parties to file briefs on a legal issue regarding the proper calculation of the Debtor's disposable income. The Trustee filed the Brief of James L. Henley, Jr., Standing Chapter 13 Trustee in Support of Trustee's Objection to Confirmation (the "Trustee's Brief") (Dkt. 20) and the Debtor filed the Debtor's Brief (the "Debtor's Brief") (Dkt. 22).[1] The Court issued the Order

---

[1] The Court gave the parties thirty (30) days from the date of the Hearing to file simultaneous briefs. The deadline for timely-filed briefs was January 15, 2020. Both parties filed their briefs one day late on January 16, 2020. Neither party objected to the timeliness of the briefs, and the Court considers both briefs in its analysis.

Requiring Supplemental Brief from Annalyn Nelson Whitt (Dkt. 23) on January 31, 2020, requiring the Debtor to file a supplemental brief to address a factual allegation in the Trustee's Brief. On February 5, 2020, the Debtor filed the Debtor's Reply Brief (the "Debtor's Supplemental Brief") (Dkt. 25). After fully considering the matter, the Court finds as follows:[2]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Notice of the Hearing was proper under the circumstances.

## Facts

The Debtor filed a Voluntary Petition for Individuals Filing for Bankruptcy (Dkt. 1) under chapter 13 of the Bankruptcy Code on October 24, 2019. The Debtor scheduled $189,258.00 of debt secured by property on Schedule D: Creditors Who Have Claims Secured by Property ("Schedule D"). (Dkt. 4 at 11-12). On Schedule D, the Debtor listed a mortgage on her home located at 306 Millcreek Drive, Brandon, MS 39047 with a codebtor in the amount of $178,332.00 and a claim in the amount of $10,926.00 secured by a 2015 Honda Pilot EX. (Dkt. 4 at 11-12). The Debtor scheduled $156,267.00 of unsecured debt on Schedule E/F: Creditors Who Have Unsecured Claims ("Schedule E/F"). (Dkt. 4 at 13-18). Student loans accounted for $120,352.00 of the Debtor's Schedule E/F debt. (Dkt. 4 at 18). The bar date for non-governmental claims was January 2, 2020. The timely-filed claims against the Debtor amount to $274,693.60 of which $84,883.91 are general, unsecured claims.[3]

---

[2] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[3] Included in the Debtor's unsecured claims is a $45,667.11 unsecured student loan obligation. (Cl. 2-1).

On Schedule I: Your Income ("Schedule I"), the Debtor listed that she is currently employed at Aledade, Inc. and receives monthly wages of $4,817.40. (Dkt. 4 at 21). Among other payroll deductions, the Debtor listed a $144.52 payment each month for "Voluntary contributions for retirement plans." (Dkt. 4 at 22). The Debtor listed additional income of $527.00 per month in family support. Her total monthly income is $4,080.99. (Dkt. 4 at 22). On Schedule J: Your Expenses ("Schedule J") (Dkt. 4 at 24), the Debtor listed her monthly expenses of $1,920.00 for her household that includes three (3) dependents. (Dkt. 4 at 23-24). The Debtor uses a household size of four (4) for calculating median family income. The median family income for a household of four (4) in Mississippi is greater than the Debtor's average monthly income. (Dkt. 4 at 36). The Debtor, therefore, is a below-median income debtor allowing her to designate a thirty-six (36)-month commitment period. According to Schedule J, the Debtor's monthly disposable income under 11 U.S.C. § 1325(b)(2)[4] is $2,160.99. (Dkt. 4).

On October 24, 2019, the Debtor filed a Chapter 13 Plan and Motions for Valuation and Lien Avoidance (the "Proposed Plan") (Dkt. 2). The Debtor proposes to make semi-monthly payments to the Trustee of $1,080.21 and make her mortgage payments and car payment through the Proposed Plan. (Dkt. 2 at 1-3). The Proposed Plan distributes zero percent (0%) to unsecured creditors.

On December 3, 2019, the Trustee filed the Objection claiming that the Proposed Plan was not filed in good faith. (Dkt. 17). The Trustee suggests that paying zero percent (0%) to unsecured creditors while continuing to contribute to a voluntary 401(k) plan in the amount of approximately $144.52 per month (three percent (3%) of her salary), or $8,671.20 over the life of the Proposed

---

[4] Hereinafter, all code sections refer to the Code found at Title 11 of the United States Code, unless otherwise noted.

Plan, does not adhere to the Debtor's obligation that "the plan provides that all of the debtor's projected disposable income . . . will be applied to make payments to unsecured creditors under the plan." (Dkt. 17 ¶ 3 (citing 11 US.C. § 1325(b)(1)(B)). The Trustee asks the Court to deny confirmation of the Proposed Plan or, in the alternative, to require the Debtor to modify the Proposed Plan to increase the distribution to unsecured creditors.

## Discussion

Whether 401(k)[5] contributions should be considered disposable income or whether such contributions are excluded from disposable income is an unsettled question in this jurisdiction. The Fifth Circuit Court of Appeals has not made a determination on the correct treatment of voluntary 401(k) contributions for chapter 13 debtors in bankruptcy. To analyze the issue, the Court begins with the language and structure of the Bankruptcy Code.

The filing of a bankruptcy petition creates a bankruptcy estate comprised of the debtor's legal and equitable interests in property unless excluded by statute. 11 U.S.C. § 541(a). For chapter 13 debtors, the estate also includes property and earnings acquired "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1), (2). A chapter 13 plan must demonstrate that all of a debtor's projected disposable income received during the life of the plan will be paid to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B); *see Hamilton v. Lanning*, 560 U.S. 505, 509 (2010).

---

[5] A 401(k) plan is a contribution plan defined by the Internal Revenue Service (the "IRS"). The IRS defines a 401(k) plan as a contribution plan where an employee can make contributions from his or her paycheck either before or after-taxes. The contributions go into a 401(k) trust with the employee often choosing the investments based on options. An employer can also make contributions such as matching the employee's contributions up to a certain percentage. *See* 26 U.S.C. § 401(k).

Disposable income is defined as "'current monthly income received by the debtor' less 'amounts reasonably necessary to be expended' for the debtor's maintenance or support, for qualifying charitable contributions, and for business expenditures." *Hamilton*, 560 U.S. at 510. The "current monthly income" calculation is an average of the debtor's monthly income during a look-back period, generally consisting of the six months preceding the filing of the bankruptcy petition. *Id.* The Court also may consider known or virtually certain upcoming changes in the debtor's monthly income or expenses at the time of the confirmation of the plan. *Id.* at 524.

As to the second part of the equation for calculating disposable income, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 to correct perceived issues within the bankruptcy system. In determining the "amounts reasonably necessary to be expended," below-median debtors may include expenses "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed." 11 U.S.C. § 1325(b)(2)(A)(i). Above-median debtors, however, must use the means test under 11 U.S.C. § 707(b)(2)[6] to determine the "amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(3). Neither § 1325 nor § 707 explicitly authorizes 401(k) contributions as an allowable expense in calculating disposable income. *Miner v. Johns (In re Miner)*, 589 B.R. 51, 56 (W.D. La. 2018).

---

[6] Hereinafter, all code sections refer to the Code found at Title 11 of the United States Code, unless otherwise noted.

Prior to BAPCPA, 401(k) contributions were considered disposable income and were not a necessary expense. *See In re Hill*, 328 B.R. 490, 495 (Bankr. S.D. Tex. 2005). BAPCPA added two sections affecting 401(k) contributions, § 541(b)(7) and § 1322(f).[7]

Some courts have attributed the interpretive dispute regarding § 541(b)(7), which refers to chapter 13 disposable income, to its placement in § 541, a statute that defines "property of the estate." *See In re Vanlandingham*, 516 B.R. 628, 632 (Bankr. D. Kan. 2014). Section 541(b)(7) sets forth property that is excluded from the bankruptcy estate as follows:

> (b) Property of the estate does not include—
>
> * * *
>
> (7) any amount—
>
>> (A) withheld by an employer from the wages of employees for payment as contributions—
>>
>>> (i) to—
>>>
>>>> (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>>>>
>>>> (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>>>>
>>>> (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>>
>> except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or

---

[7] The changes to § 1322(f) only effected 401(k) contributions as repayments for loans against a 401(k) account. Specifically, § 1322(f) states, "A plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f).

> > (ii) to a health insurance plan regulated by State law whether or not subject to such title[.]

11 U.S.C. § 541(b)(7). There are three distinct approaches to analyzing the relationship between § 541(b)(7) and § 1325(b)(2).

**A.     The Three Approaches**

The first view holds that all voluntary retirement contributions, both prepetition and postpetition, are permitted under § 541(b)(7), limited only by the good faith requirement of § 1325(a)(3). *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256 (Bankr. S.D. Ga. 2006). The second view holds that § 541(b)(7) does not permit postpetition voluntary retirement contributions in any amount regardless of whether the debtor was making prepetition retirement contributions. *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010). The third view reads § 541(a) and § 541(b)(7) as limiting voluntary contributions to those amounts being made as of the petition date and holds that § 541(b)(7) does not permit a debtor to commence voluntary contributions postpetition. *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012).

    **1.     The *Johnson* Approach**

The first approach, followed by the majority of courts to address this issue, adopts the analysis in *Johnson* and is the most favorable for debtors. *See, e.g. In re Garza*, 575 B.R. 736 (Bankr. S.D. Tex. 2017); *In re Vanlandingham*, 516 B.R. at 638; *In re Cantu*, 553 B.R. 565 (Bankr. E.D. Va. 2016), *aff'd,* 713 F. App'x 200 (4th Cir. 2017); *In re Drapeau*, 485 B.R. 29 (Bankr. D. Mass. 2013); *In re Mati*, 390 B.R. 11 (Bankr. D. Mass 2008); *In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007); *In re Nowlin*, 366 B.R. 670 (Bankr. S.D. Tex. 2007), *aff'd on other grounds*, 576 F.3d 258 (5th Cir. 2009); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007). In *Johnson*, the court held that debtors are permitted to shelter retirement contributions from unsecured creditors into qualifying employment benefit plans ("EBPs") within the legal limits of the EBP as outlined

by the IRS. *In re Johnson*, 346 B.R. at 263. By reading the plain language of § 541(b)(7) as, "[a]ny amount that is either 'withheld by' or 'received by' a debtor's employer for qualifying EBPs, deferred compensation plans, tax-deferred annuities, or state-law regulated health insurance plans 'shall not constitute disposable income, as defined in section 1325(b)(2),'" the *Johnson* court's broad interpretation included EBPs subject to 26 U.S.C. § 401(k). *Id.* The *Johnson* court extended its analysis to include both prepetition and postpetition retirement contributions, so long as the contributions do not exceed the limits legally permitted by the 401(k) plan. *Id.* at 263.

Courts following the *Johnson* approach have expanded on its reasoning and have allowed debtors to protect prepetition and postpetition retirement contributions. For example, the *Devilliers* court held that § 541(b)(7) provides that contributions to qualified EBPs do not constitute disposable income for purposes of § 1325(b)(2) and, therefore, as excluded income, the "contributions are not a deduction because they were never included in the first instance." *In re Devilliers*, 358 B.R. at 864-65. Unlike the provisions of § 707(b)(2) and § 1325(b)(2) or (3), § 541(b)(7) does not modify excluded contributions based on reasonableness or necessity but protects the contributions by entirely excluding them. *Id.*

### 2. The *Prigge* Approach

The second approach follows the reasoning of the court in *Prigge* that debtors cannot deduct voluntary retirement contributions from disposable income. *Id.* at 677. The *Prigge* court held that BAPCPA did not explicitly exclude 401(k) contributions from disposable income, and, consequently, 401(k) contributions should not be excluded. In comparison, § 1322(f) explicitly excludes 401(k) loan payments from the definition of disposable income. *Id.* at 677. The court also noted that the means test includes a reference to the IRS guidelines in determining necessary expenses for above-median debtors, and the IRS guidelines do not include contributions to a

retirement account as a necessary expense. *Id.* at 676 (citing *In re Egebjerg*, 574 F.3d 1045, 1052 (9th Cir. 2009)). Consequently, the court in *Prigge* held that postpetition 401(k) contributions are included in disposable income and, therefore, available for payment to unsecured creditors. *Id.* at 677.

### 3. The *Seafort* Approach

The *Seafort* approach is a compromise between the holdings in *Prigge* and *Johnson* and creates a third approach to the treatment of voluntary contributions. The Bankruptcy Appellate Panel of the Sixth Circuit (the "BAP") in *Seafort* did not allow a debtor to commence voluntary 401(k) contributions during the life of the plan. *Burden v. Seafort (In re Seafort)*, 437 B.R. 204 (B.A.P. 6th Cir. 2010); *see In re Read*, 515 B.R. 586 (Bankr. E.D. Wis. 2014); *In re Bruce*, 484 B.R. 387 (Bankr. W.D. Wash. 2012). In *Seafort*, the debtor was making 401(k) loan payments at the time of filing, which is allowed by § 1322(f), but was not making 401(k) contributions. *In re Seafort*, 437 B.R. at 206-07. The debtor would pay off the 401(k) loan during the life of the plan and wanted to start making contributions to a voluntary 401(k) plan with the additional income. By reading § 541(b)(7) together with § 541(a), the *Seafort* court held that the scope of the property of the bankruptcy estate is established when the bankruptcy petition is filed, and, therefore, only 401(k) contributions that are established with the employer at the time of filing are excluded from property of the bankruptcy estate under § 541(b)(7). *See In re Seafort*, 437 B.R. at 209. According, the BAP held that the income made available after repayment of the § 401(k) loan must be considered disposable income for distribution to unsecured creditors. In dicta, the BAP suggested

that a debtor may continue prepetition contributions postpetition but may not begin or increase the contributions. *Id.* at 210.

The U.S. Court of Appeals for the Sixth Circuit affirmed the BAP's decision in *In re Seafort* but distinguished its reasoning. *See In re Seafort*, 669 F.3d at 667-68. The Sixth Circuit agreed with the *Prigge* court that if Congress had intended to exclude all 401(k) contributions from disposable income it would have included a provision similar to § 1332(f) regarding the repayment of 401(k) loans. *In re Seafort*, 669 F.3d at 672 (citing *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). The Sixth Circuit also noted, "Congress. . . does not consider voluntary contributions as 'reasonable and necessary expense[s]' deductible from 'disposable income,' . . . because it did not list them in § 707(b)(2)(A) & (B). In fact, it expressly excluded them from the list of 'necessary expenses' in Official Form 22C, which provides the formula for calculating 'reasonable and necessary expenses' of above-median income debtors."[8] *In re Seafort*, 669 F.3d at 672. *But see In re Devilliers*, 358 B.R. at 864 (finding that contributions are excluded from disposable income pursuant to § 541(b)(7) and "are not a deduction because they were never included in the first instance."). For below-median debtors, the IRS guidelines provided in § 707(b)(2)(A) and (B) specifically do not apply. 11 U.S.C. § 1325(b)(2); s*ee In re Cantu*, 553 B.R. at 571 n.4; *In re Bruce*, 484 B.R. 387 (Bankr. W.D. Wash. 2012).

The Sixth Circuit in *Seafort* distinguished its reasoning from the BAP's decision and held that § 541(b)(7) does protect voluntary retirement contributions to some extent because it provides that "such contributions 'shall not constitute disposable income as defined in section 1325(b)(2).'" *In re Seafort*, 669 F.3d at 672 (citing 11 U.S.C. § 541(b)(7)). Reading § 541(a) and § 541(b)(7)

---

[8] Official Form 22C has been superseded by Official Form 122C-2: Chapter 13 Calculation of Your Disposable Income ("Form 122C-2").

concurrently, the Sixth Circuit held that Congress included § 541(b)(7) merely to "clarify that pre-petition retirement contributions do not constitute property of the estate or post-petition disposable income." *Id.* at 673. The court further concluded that the congressional intent was only to exclude voluntary retirement contributions already in existence at the time a bankruptcy petition is filed from "disposable income" available to pay unsecured creditors. The Sixth Circuit noted that its decision was not an admission that continued postpetition voluntary 401(k) contributions are excluded from disposable income because that issue was not then before the court. In dicta, the court, however, indicated in a footnote that for the reasons set forth in *Prigge*, it could not agree with the trustee's concession that continuing contributions may be excluded from disposable income. *Id.* at 674 n.7.

**B.     Analysis**

Having considered the three approaches, the Court joins the majority and other courts within the Fifth Circuit that have held that postpetition retirement contributions are not considered disposable income. *See In re Miner*, 589 B.R. at 60-61; *In re Garza*, 575 B.R. at 745-46; *In re Devilliers*, 358 B.R. at 866-68; *In re Oltjen*, No. 07-60534-RCM, 2007 WL 2329695 (Bankr. W.D. Tex. Aug. 13, 2007). Statutory interpretation begins with the language of the statute, and if its meaning is plain, a court "make[s] no further inquiry unless the literal application of the statute will end in a result that conflicts with Congress's intentions." *Id.* (citations omitted). Statutory provisions are read in context, and courts should avoid any interpretation that is incompatible with the rest of the law. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The language of § 541(b)(7) provides, "property of the estate does not include . . . any amount withheld by an employer from wages of employees for payments as contributions" to an employee benefit plan, deferred compensation plan, or a tax-deferred annuity. This language

is not ambiguous. Consequently, the language excludes funds already contained within a retirement account at the time of the filing the petition from the bankruptcy estate.

In 2005, BAPCPA added the language to § 541(b)(7), "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)," in the "hanging paragraph." 11 U.S.C. § 541(b)(7). While the inclusion of a "hanging paragraph" in the Bankruptcy Code can cause confusion, the language demonstrates that Congress intended to exclude retirement contributions from available disposable income under § 1325(b). *See* 5 COLLIER ON BANKRUPTCY ¶ 541.23[1] (16th ed. 2019) ("The fact that the provision appears in section 541(b)(7) is perhaps poor drafting, but the reference to disposable income under section 1325(b), which encompasses only postpetition income, removes any doubt that postpetition contributions to the specified plans that are withheld by employers are to be excluded from the disposable income calculation."). As explained, the hanging paragraph is not necessary to exclude prepetition contributions from the bankruptcy estate because the plain language already makes that clear. *See id.* ("[A] few courts have concluded that section 541(b)(7) only protects retirement funds already in the hands of the employer. This conclusion makes no sense, because any funds in the hands of the employer as of the chapter 13 petition date would never be considered to be disposable income, which only includes income received by the debtor after the petition is filed."). The Court, therefore, only can conclude that Congress included the hanging paragraph in BAPCPA to exclude retirement contributions of this sort from a debtor's disposable income. *In re Miner*, 589 B.R. at 60 (citing *Meyer v. Renteria (In re Renteria)*, 470 B.R. 838 (B.A.P. 9th Cir. 2012) (when Congress amends a statute to add language courts must presume the statute is intended to serve some purpose)).

The Committee Notes from the Judicial Conference of the United States regarding Form 122C-2's development also provide guidance. *In re Miner* 589 B.R. at 60 n.11. Even though "[t]he 'means test' for above income debtors requires a debtor to complete Form 122C-2," the Committee Note dated 2005-2008 provides, "[A] line entry is provided for deduction of contributions by the debtor to certain retirement plans, listed in § 541(b)(7)(B), since that provision states that such contributions 'shall not constitute disposable income, as defined in section 1325(b).'" JUDICIAL CONFERENCE OF THE UNITED STATES, OFFICIAL BANKRUPTCY FORM 122 (COMMITTEE NOTE) (2005-2008). A leading treatise on bankruptcy law makes the same conclusion:

> The reference to disposable income under section 1325(b)(2) makes clear that the provision is also intended to exclude the listed withholdings and payments from the disposable income calculation under that provision, so that chapter 13 debtors may save for their retirement.

5 COLLIER ON BANKRUPTCY ¶ 541.23[1] (16th ed. 2019). The treatise justifies the conclusion by recognizing that this reading of the hanging paragraph is "in accord with the numerous other provisions enacted in 2005 that similarly protect retirement savings, and render such savings immune from creditor claims in bankruptcy, as well as the general government policy of encouraging retirement savings." *Id.* (internal citations omitted).

Joining the majority view, the Court holds that chapter 13 debtors may continue to contribute to a retirement plan and need not instead devote the income used for voluntary contributions to unsecured creditors through their chapter 13 plan. Otherwise, the interplay of the statutory language between § 541(b)(7) and § 1325(b)(2) for both above-median and below-median debtors would be rendered meaningless. Consequently, it is unnecessary to consider if a voluntary contribution satisfies the "reasonable or necessary" standard of §1325(b)

since that determination is made by § 541(b)(7). The analysis now turns on whether the Proposed Plan was proposed in good faith.

The Fifth Circuit recognizes a standard of good faith in every bankruptcy proceeding. *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068 (5th Cir. 1986). "[T]he court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). A good faith inquiry requires the court to evaluate the proposed plan in its entirety. *In re Miner*, 589 B.R. at 62. The Fifth Circuit's totality of the circumstances test to determine whether a chapter 13 plan has been proposed in good faith requires the Court to consider:

> (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan.

*Suggs v. Stanley (In re Stanley)*, 24 F. App'x 343, 346 (5th Cir. 2009) (unpublished). Only if there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith. *See* 8 COLLIER ON BANKRUPTCY ¶ 1325.04[1] (16th ed. 2019). If the Court determines that the chapter 13 plan has not been filed in good faith, then it must deny confirmation. 11 U.S.C. § 1325(a)(3). The Debtor has the burden of showing that the Proposed Plan satisfies § 1325(a)(3). *In re Devilliers*, 358 B.R. at 867.

The Trustee's assertion of bad faith relies on: (1) the Debtor's continued voluntary 401(k) contribution while proposing to pay zero percent (0%) to unsecured creditors; and (2) the Debtor's alleged attempt to "misrepresent the amount of her voluntary retirement contributions and not accurately reflect her disposable income on her schedules." (Dkt. 20 at 11). The Debtor's

continued voluntary 401(k) contributions in the same amount as her pre-petition voluntary 401(k) contributions are permissible, and, therefore, bad faith cannot be inferred from her conduct. *In re Egan*, 458 B.R. 836, 850 (Bankr. E.D. Penn. 2011); *see In re Melendez*, 597 B.R. 647, 659 (D. Colo. 2019) ("When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith." (internal quotation & citation omitted)); *In re Jones*, No. 07-10902-13C, 2008 WL 4447041, at *5 (Bankr. D. Kan. Sept. 26, 2008) ("reject[ing] the Chapter 13 Trustee's argument that the Debtors' postpetition commencement of retirement plan contributions, standing alone, establishes their Chapter 13 plan was not proposed in good faith"). The amount contributed by a debtor that does not exceed the IRS limits cannot be the only reason for bad faith. *See In re Garza*, 575 B.R. at 751.

The Trustee also asserts that the Debtor's misrepresentation of the amount of her voluntary contribution demonstrates bad faith. (Dkt. 20 at 10). Schedule I listed the Debtor's "Voluntary contributions for retirement plans" as $144.52 each month. (Dkt. 4 at 21-22). The Trustee, for the first time in the Trustee's Brief, asserts that the "Debtor's pay advices reflect she is paying $211.74 each month to a voluntary retirement plan." (Dkt. 20 at 15-16). In the Debtor's Supplemental Brief, the Debtor explains the discrepancy. The voluntary 401(k) contribution is approximately three percent (3%) of her gross pay, and because the Debtor's gross pay fluctuates each month, the three percent (3%) contribution does too. (Dkt. 25 at 1-4). To demonstrate this fluctuation, the Debtor included a pay advice for the pay period beginning September 16, 2019 and ending September 30, 2019 that reflects a gross pay of $3,471.88 (Dkt. 25-1) and a pay advice for the pay period beginning March 16, 2019 and ending March 31, 2019 that reflects a gross pay of $1,718.75 (Dkt. 25-2). The Debtor contends that the amount reported on Schedule I is an approximant

average of the regular three percent (3%) deduction throughout the year and not an attempt to misrepresent her voluntary contribution. The Court agrees, and finds that the Debtor has not filed the Proposed Plan in bad faith.

## Conclusion

Even considering the entirety of the Debtor's circumstances and not just the allegations of bad faith relied upon by the Trustee, the current record does not contain evidence of bad faith. The Debtor's continued voluntary 401(k) contributions within the limits of her 401(k) plan are permissible under the Bankruptcy Code. The Debtor did not misrepresent the amount of her voluntary 401(k) contribution in her filings with this Court.

IT IS, THEREFORE, ORDERED that the Objection is overruled.

##END OF OPINION##